UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:23-mj-02693-Reid

UNITED STATES OF AMERICA,

v.

HARRYSON JEAN-BAPTISTE, SR.,

    Defendant.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek M. Maynard)? No.

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? No.

3. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No.

        Respectfully submitted,

        MARKENZY LAPOINTE
        UNITED STATES ATTORNEY

By: /s/ Eli S. Rubin
    Eli S. Rubin
    Assistant United States Attorney
    Court Id No. A5502535
    United States Attorney's Office
    99 N.E. 4th Street
    Miami, FL 33132
    Tel: 305-961-9247
    Email: Eli.rubin@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America ) | |
| v. ) | Case No. 1:23-mj-02693-Reid |
| Harryson Jean-Baptiste, Sr., ) | |
| Defendant. ) | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of June 19, 2020, through on or about July 20, 2020, in the county of Miami-Dade in the Southern District of Florida, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1344 | Bank Fraud; and |
| 18 U.S.C. § 1957 | Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

*Complainant's signature*

Christopher J. Ramos, Special Agent IRS
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by Face Time

Date: April 10, 2023

*Judge's signature*

City and state:   Miami, Florida           Honorable Lisette M. Reid, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Christopher J. Ramos, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the United States Department of Treasury, Internal Revenue Service, Criminal Investigation (IRS-CI), and have served in this capacity since November 2020. In association with my official duties, I have the responsibility to investigate possible violations of the Internal Revenue Laws (Title 26, United States Code), the Bank Secrecy Act (Title 31, United States Code), and the Money Laundering Statutes (Title 18, United States Code). Since becoming an IRS Special Agent, I have personally investigated and/or assisted in investigations relating to the Internal Revenue Laws. I have worked with investigators of federal, state and local law enforcement agencies.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only. Applicable law cited herein is based upon information provided by the United States Attorney's Office for the Southern District of Florida

3. This affidavit is made in support of a criminal complaint charging Harryson Jean-Baptiste Sr. ("JEAN-BAPTISTE") with violating Title 18, United States Code, Sections 1344 (Bank Fraud) and 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity).

4. This affidavit is based on my personal investigation and investigation by others, including federal and local law enforcement officials whom I know to be reliable and trustworthy. The facts contained herein are based on witnesses' interviews and documents obtained in the course of the investigation as well as through other means. This affidavit does not include every fact known to me about this investigation, but rather only those facts sufficient to establish probable cause.

## OVERVIEW OF THE PAYCHECK PROTECTION PROGRAM

5. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. 116-136, 134 Stat. 281, is a federal law enacted in or around March 2020 designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.

6. One source of relief provided by the CARES Act was the Paycheck Protection Program ("PPP").

7. The PPP authorized up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses. Among other increases in funding, in or around April 2020, Congress authorized over $300 billion in additional PPP funding.

8. In order to obtain a PPP loan, a qualifying business had to submit a PPP loan application, which had to be signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must have stated, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was

2

eligible to receive under the PPP. In addition, businesses applying for a PPP loan had to provide documentation to the lending institution showing their payroll expenses. Typically, businesses would supply documents showing the amount of payroll taxes reported to the Internal Revenue Service ("IRS").

9. A PPP loan application had to be processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were, under certain circumstances, 100% guaranteed by the U.S. Small Business Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

10. PPP loan proceeds had to be used by the business on certain permissible expenses— payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time after receiving the proceeds and using a certain amount of the PPP loan proceeds on payroll expenses.

**JEAN-BAPTISTE OBTAINED A FRAUDULENT PPP LOAN**

11. JEAN-BAPTISTE applied for and received a false and fraudulent PPP loan on behalf of TrustedCommunications LLC ("TrustedCommunications"), a Miami-based entity he controlled. JEAN-BAPTISTE received nearly $1.5 million in fraud proceeds and spent much of the money—before it was frozen—on personal expenditures and that of others.

3

### *Background on JEAN-BAPTISTE and TrustedCommunications*

12. JEAN-BAPTISTE is a resident of the Southern District of Florida. His last known address is in West Park, Florida, in Broward County.

13. On approximately July 1, 2019, JEAN-BAPTISTE formed TrustedCommunications under the laws of Florida. JEAN-BAPTISTE was listed as the entity's registered agent and Ambassador. A residential apartment dwelling in Miami-Dade County (the "14th Place Address") was listed as the entity's principal address and mailing address. Based on a lease agreement provided by the landlord of the dwelling, JEAN-BAPTISTE's close relative occupied the 14th Place Address at the time TrustedCommunications was formed. The relative listed JEAN-BAPTISTE as his/her emergency contact.

14. On approximately July 18, 2019, JEAN-BAPTISTE opened a bank account ending in 2997 in the name of TrustedCommunications at Bank 1 ("Account 2997"). Bank 1 was a financial institution federally insured by the Federal Deposit Insurance Corporation ("FDIC") and based in Charlotte, North Carolina. JEAN-BAPTISTE opened the account at a branch in Miami, Florida, and was the account's only signer.

### *Bank Records for Account 2997 Show No Employees*

15. Bank records for Account 2997 from approximately July 2019 through May 2020 establish that the account was not used for business expenses or salary, but rather everyday living expenses.

16. On average, every month from July 2019 through May 2020, JEAN-BAPTISTE deposited $1,618.09 into the account and withdrew $1,582.30. Credits included cash deposits and transfers via Zelle. Debits included transfers to Capital One, cash withdrawals, and debit card payments to vendors such as Amazon, Jet Blue, and Speedway.

17.  The bank records did not evidence any paychecks to any employees, nor any payments to any payroll company, since the opening of the account.

*JEAN-BAPTISTE Applied for and Received a Fraudulent PPP Loan*

18.  On approximately June 19, 2020, JEAN-BAPTISTE applied for a PPP loan on behalf of TrustedCommunications with Loan Processor 1. Loan Processor 1 was a financial technology company based in Atlanta, Georgia. Loan Processor 1 worked with Bank 2 to fund PPP loans. Bank 2 was a financial institution insured by the FDIC and based in Fort Lee, New Jersey.

19.  JEAN-BAPTISTE submitted the PPP loan application online. The internet protocol ("IP") address associated with the application was assigned to RIPE NCC, a regional internet registry for countries in Europe, the Middle East, and parts of Central Asia. Given that JEAN-BAPTISTE lives in the Southern District of Florida and, as described below, converted the funds in the Southern District of Florida, it appears that he used a virtual private network ("VPN") to disguise his actual location. Further, based on records received from the U.S. Department of Homeland Security, Homeland Security Investigations, at the time of the application, JEAN-BAPTISTE had not left the United States since 2018.

20.  In his application, JEAN-BAPTISTE stated that TrustedCommunications had 32 employees and an average monthly payroll of $599,336. These assertions were false. TrustedCommunications did not have any employees, nor any payroll. Based on records received from the Florida Department of Revenue, TrustedCommunications had not registered to pay employment tax in Florida, the entity's purported place of operation. Nor had the entity in fact paid any such taxes, despite the fact all Florida-based employers are required to do so.

21. In the application, JEAN-BAPTISTE listed himself as the owner of TrustedCommunications and provided certain accurate personal identifying information, such as his social security number and phone number ending in 8278 (the "8278 Phone Number").[1] JEAN-BAPTISTE also included a color photograph of the front side of his valid Florida driver's license.

22. JEAN-BAPTISTE included in the application an IRS Form W-3 purportedly filed with the IRS. The form stated that TrustedCommunciations had filed 32 Form W-2s with the IRS and withheld from its employees over $1.4 million dollars in taxes: over $899,000 in federal income tax, over $445,000 in social security tax, and over $104,000 in medicare tax.[2]

23. This document was false and fraudulent. At the time of the application, based on IRS records, TrustedCommunications had not submitted any documents to the IRS, nor paid any taxes.

24. JEAN-BAPTISTE listed his email address as trustedcommunications@mail.com. Records from the email account's provider stated that the account was created on June 9, 2020, approximately ten days before JEAN-BAPTISTE applied for the PPP loan. Further, between the creation of the account and October 1, 2020, the account only received emails from Loan Processor 1.

25. In his PPP application, JEAN-BAPTISTE made the following certifications:

---

[1] Numerous posts on Facebook and Instagram depict JEAN-BAPTISTE advertising his ability to help viewers "maximize [their] credit score[s.]" JEAN-BAPTISTE is shown in a series of photographs. One photograph lists his name as "Harryson J Baptiste"; another as "Harryson JB." Viewers are instructed to call the 8278 Phone Number to speak with him.

[2] The IRS Form W-2, referred to as a Wage and Tax Statement, is used to report wages paid to employees and the taxes withheld from them. The IRS Form W-3, referred to as a Transmittal of Wage and Tax Statements, is used to summarize all of a business's employee wages and contributions for the previous year.

   a. "All loan proceeds will be used only for business-related purposes . . .";

   b. TrustedCommunications "was in operation on February 15, 2020, and had employees for whom it paid salaries and payroll taxes . . .";

   c. ". . . [T]he information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law[.]"

26. Loan Processor 1 approved JEAN-BAPTISTE's application. On approximately June 23, 2020, Bank 2 transferred into Account 2997, via an Automated Clearinghouse ("ACH"), $1,498,339. At the time of the credit, Account 2997's balance was approximately $2,521.10.

## JEAN-BAPTISTE CONVERTED LOAN PROCEEDS & CALLED LOAN PROCESSOR 1

27. JEAN-BAPTISTE quickly began spending and distributing the loan proceeds.

28. On approximately June 26, 2020, JEAN-BAPTISTE wrote two $1,900 checks, one to himself and one to a close relative. Both checks were drawn on Account 2997. The memo line on both checks read, "Payroll Back Pay."

29. On July 1, 2020, JEAN-BAPTISTE wrote a $8,300 check drawn on Account 2997 to himself. The memo line read "Materials – Repair." On approximately July 6, 2020, JEAN-BAPTISTE negotiated the check at a Bank 1 branch in Hollywood, Florida. Surveillance footage captured still images of JEAN-BAPTISTE negotiating the check.

30. JEAN-BAPTISTE also issued several large-dollar checks with the loan proceeds. On July 9, 2020, he wrote a check to "P.C." for $50,000. The memo line of the check reads "Initial Company Investment."

7

31. On July 14, 2020, JEAN-BAPTISTE wrote a $75,000 check to an entity for an "Advertisement," according to the check's memo line.

32. On July 15, 2020, JEAN-BAPTISTE wrote another check to "P.C." drawn on Account 2997, this one for $12,500. The memo line read, "Consulting Fee." Bank 1 records show that the check was negotiated on July 20, 2020, at a Bank 1 branch in Miami, Florida. Surveillance footage captured still images of "P.C." negotiating the check.

33. On approximately July 7, 2020, JEAN-BAPTISTE executed a Services Agreement contract with Payroll Company 1, a payroll company. JEAN-BAPTISTE signed the contract using DocuSign, a web-based platform that facilitates digital signatures. JEAN-BAPTISTE used the email account harryson.j.baptiste@gmail.com to sign the contract.

34. Beginning three days later, Payroll Company 1 began withdrawing monies from Account 2997 and issuing paychecks to numerous individuals. In total, 32 people, including JEAN-BAPTISTE, received a payment from Account 2997.

35. According to Payroll Company 1 records, five of the 32 recipients had the 14th Place Address listed as his/her home address. The purported employees included at least three immediate family members of JEAN-BAPTISTE. Six other recipients shared a separate address.

36. In August 2020, the exact date unknown, Bank 1 froze Account 2997 based on suspicion of fraud. Approximately $1,139,827.32 was frozen. JEAN-BAPTISTE had spent more than $350,000.[3]

---

[3] On approximately July 14, 2021, law enforcement obtained a seizure warrant for Account 2997. Warrant to Seize Property Subject to Forfeiture Warrant by Telephone or Other Reliable Electronic Means, *In the Matter of the Seizure of All Principal, Deposits, Interest, Dividends, and Any Other*

8

37. Based on records obtained from Loan Processor 1, on approximately August 28, 2020, JEAN-BAPTISTE called Loan Processor 1 from the 8278 Phone Number. JEAN-BAPTISTE informed an employee of Loan Processor 1 that he had received a PPP loan of "close to 1.5" million but that Bank 1 had frozen his account. JEAN-BAPTISTE asked if there was anything Loan Processor 1 could do to assist. When asked for the email address associated with his loan, JEAN-BAPTISTE admitted that he did not remember.

## CONCLUSION

1. Based on my training and experience, and the information provided in this affidavit, I respectfully submit that there is probable cause to believe that:

- From on or about June 19, 2020, through on or about June 22, 2020, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant, Harryson Jean-Baptiste, Sr., did knowingly, and with the intent to defraud, execute, and attempt to execute, and cause the execution of, a scheme and artifice to defraud one or more financial institutions, which scheme and artifice employed a material falsehood, and did knowingly, and with intent to defraud, execute, and attempt to execute, and cause the execution of, a scheme and artifice to obtain any of the moneys and funds owned by, and under the custody and control of, one or more financial institutions, by means of materially false and fraudulent pretenses, representations, and promises, relating to a material fact, in violation of Title 18, United States Code, Section 1344(1) and (2).

[remainder of page left blank intentionally]

---

*Funds Formerly Credited to Account [Redacted]2997 at Bank of America, N.A. Held in the Name of TrustedCommunications LLC*, 21-6420-MJ-Strauss (S.D. Fla. July 14, 2021) (SEALED).

- From on or about July 15, 2020, through on or about July 20, 2020, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant, Harryson Jean-Baptiste, Sr., did knowingly engage in a monetary transaction affecting interstate commerce, by, through, and to a financial institution in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, and knowing that the property involved in the monetary transaction represented the proceeds of some form of unlawful activity, that is bank fraud in violation of Title 18, United States Code, Section 1344, in violation of Title 18, United States Code, Section 1957.

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

_____
Christopher J. Ramos
Internal Revenue Service, Criminal Investigation
Special Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Face Time on this <u>10th</u> day of April, 2023, in Miami, Florida.

_____
HONORABLE LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

10